[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action seeks primarily to recover a deposit paid to a builder. The defendant Robert J. Moravek, Sr., allegedly was the sole member of RJM Associates, LLC, the limited liability company which contracted with the plaintiff to build the house. The fourth count of the complaint seeks to impose personal liability upon Moravek individually; the count alleges that Moravek is the controlling member of the LLC, that he treated LLC fluids as his own by paying virtually all of his personal expenses from the account of the LLC, thus draining the LLC's assets such that they are insufficient to meet its obligations, that by his conduct Moravek "caused the independence of said LLC to cease", and that adherence to the fiction of separate identity would defeat the interests of justice.
The defendant Moravek has moved to strike the fourth count. Although he expressly does not concede that the allegations would be sufficient to "pierce the veil" of corporate protection against individual liability, the thrust of his argument is that in the context of a member-operated limited liability company, there can be no piercing of the LLC veil. Recognizing that there is no binding Connecticut authority precisely on point, Moravek argues that the statutory scheme expressly allows the individual to manage the LLC; he also refers to several law review articles which note the difficulty with which the veil ought to be allowed to be pierced in the context of member-operated LLC's.
Having reviewed the authorities cited by both sides[1], I am not persuaded that the legislature intended the limitation on member liability CT Page 7734 to be absolute. Section 34-133(a) of the General Statutes provides that "(except as provided in (b)), a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager . . . for a debt, obligation or liability (of the LLC)." (Emphasis added). Subsection (b) provides, inter alia, that the personal liability of a member "shall be no greater than that of a shareholder who is an employee of a corporation formed under Chapter 601." The legislature is deemed to have been aware of our deeply rooted common law remedy of imposing personal liability upon a shareholder of a corporation where the corporate shield has been used to promote injustice, and the legislature surely could have expressly created a blanket limitation of member liability had it so chosen. Not much imagination is required to hypothesize all sorts of pernicious uses of such a blanket limitation.
I hold, then, that the traditional notions of imposing boundaries on the limitation of individual liability apply to limited liability companies. See, e.g., Litchfield Asset Management, supra. The defendant suggests that even if that is so, individual liability ought not be imposed on the so-called "identity" theory where the LLC is member-managed.
There have been at least two theories suggested as specific ways of piercing the corporate veil, the instrumentality rule and the identity rule. "The instrumentality rule requires, in any case but an express agency, proof of three elements:(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." Tomasso v. Armor Construction Paving, Inc., 187 Conn. 544 (1982). Under the identity theory, the proponent must "`show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, [such that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.' Saphir v.Neustadt,[2] supra, 210. The identity rule primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance CT Page 7735 of corporate formalities between the two entities. See Zaist v. Olson,[3]
supra, 575-76, 578 (and cases cited therein)." Tomasso, supra, 559-60 (footnotes omitted).
Although the narrowly defined identity theory would not appear to apply on the facts alleged in this case in any event, the narrow definitions may not be overwhelmingly significant. As stated by Justice Borden, the principle underlying the identity theory was applied to an individual inSaphir, and in any event:
 As a matter of policy I see no reason to permit recovery against a controlling individual under the instrumentality theory but to deny it under the identity theory. They are simply slightly different roads to the same destination. They both derive from the same principle: "Courts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." Saphir v. Neustadt, supra, 209. And they both require uniquely factual determinations by the trial court, in which "each case in which the issue is raised should be regarded as sui generis, to be decided in accordance with its own underlying facts." 1 Fletcher, op. cit., 41.3.
 Tomasso, supra, 577-78 (dissenting opinion) (footnotes omitted).
As stated by Judge Gill in Litchfield Asset Management supra:
The rationale behind the alter ego theory is that if the shareholders themselves, or the corporations themselves, disregard the legal separation, distinct properties, or proper formalities of the different corporate enterprises, then the law will likewise disregard them so far as is necessary to protect individual and corporate creditors." 1 W. Fletcher, Cyclopedia of the Law of Private Corporations (1990) § CT Page 13765 41.10, p. 614. The same theory applies in the case of a limited liability company. See, e.g., New England National, LLC v. Kabro, Superior Court, judicial district of New London. Docket No. 550014 (Feb. 16, 2000, Martin, J.); see CT Page 7736 also M. Pruner, supra, §§ 3.1.1.4, 7.14, pp. 10, 106-07.
The defendant argues that because the statutory scheme allows members to manage LLC's; see § 34-140 of the General Statutes; there can be no equitable piercing of the veil because members are allowed to act as individuals. This argument overlooks the consideration that considerable structure is required in the formation and operation of LLC's; see, e.g., §§ 34-119 to 124 and indeed all of Chapter 613 of the General Statutes; and a person who ignores the intended separation between the individual and the company ought to be no better off than the sole shareholder who ignores corporate obligations.
The plaintiffs have alleged facts which, if true, can support a conclusion that the limitation contemplated in § 34-133 does not apply. The motion to strike, then, is denied.
BEACH, JUDGE